IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| SHIRLEY S. BAKER, | } |
| Plaintiff, | } |
| v. | } CASE NO. CV 01-B-1584-NE |
| R. LES BROWNLEE, Acting Secretary of the Army, | } |
| Defendant. | } |

**ENTERED**
MAR 25 2004

## MEMORANDUM OPINION

Currently before the court is a Motion to Dismiss, or in the Alternative, for Summary Judgment filed by defendant R. Les Brownlee (the "Army").[1] (Doc. 20.) Plaintiff Shirley S. Baker brings suit under the Rehabilitation Act of 1973 and Title VII, alleging she was discriminated against on the basis of her physical disability when she was denied reasonable accommodation, placed in an inferior job position, and harassed. She further alleges that upon filing an interagency Equal Employment Opportunity complaint, defendant retaliated against her. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted.[2]

---

[1] As originally filed, the Complaint named Dr. Joseph W. Westphal, Acting Secretary of the Army, as the defendant. Since the filing of the Complaint, Westphal has been replaced by Thomas E. White as Secretary of the Army, and later by Les Brownlee, on May 10, 2003, as Acting Secretary of the Army. By rule, White and Brownlee were automatically substituted for Westphal. Fed. R. Civ. P. 25(d)(1).

[2] Defendant's Motion to Dismiss was made on the ground that plaintiff's Complaint should be dismissed because she did not state a basis for the waiver of sovereign immunity in her Complaint. Because the court is granting plaintiff's Motion for Leave to Amend Complaint, defendant's Motion to Dismiss will be denied. (Plaintiff's Second Amended Complaint states a



I.      **Factual Summary**

Plaintiff is a federal civilian General Schedule -13 employee at the United States Army Aviation and Missile Command, Security Assistance Management Directorate ("SAMD") at Redstone Arsenal, Alabama. (Doc. 1 ¶ 2; Doc. 3 ¶ 4; Doc. 21, Ex. 1 at 1; Ex. 2 at 5.) Plaintiff is currently responsible for duties similar to the ones she had at the times relevant to this suit. (Doc. 21, Ex. 2 at 5; Ex. 3 ¶ 3.) Plaintiff has worked in her present position since May 7, 2001, without any accommodation. (Doc. 21, Ex. 2 at 5; Ex. 3 ¶ 3.) Prior to her current position, plaintiff worked in another comparable position from October 2000 to May 7, 2001, without any accommodation. (Doc. 21, Ex. 3 ¶ 3; Ex. 4 ¶¶ 2-3.) Until February 17, 2000, plaintiff worked as the program manager of the Taiwan Avenger and Dual Mount STINGER programs where she was responsible for transferring United States military equipment to several foreign countries, including Taiwan. (Doc. 3 ¶¶ 4, 7; Doc. 21, Ex. 3 ¶ 2; Ex. 5.)

In a letter dated October 13, 1999, a representative from the Taiwan government sent a letter to the United States Army Security Assistance Command ("USASAC"), a higher headquarters to SAMD, requesting that the program management, which included plaintiff, be removed from the program due to unsatisfactory performance. (Doc. 21, Ex. 7, Ex. 8 at 20.) Mr. Richard G. Alpaugh, Deputy to the Commanding General of USASAC, then sent a letter to Dr. Gene E. Paro, plaintiff's third line supervisor, requesting that plaintiff, as the program manager over the Taiwan program, be removed from the program. (Doc. 21, Ex. 9; Ex. 8 at 17-21; Ex. 10; Ex. 3 ¶ 2.)

---

valid basis for subject matter jurisdiction.)

Paro testified that he felt plaintiff should be removed from the program because both Taiwan and directors at USASAC requested her removal. (Doc. 21, Ex. 3 ¶¶ 4-5.) Paro directed that Don Ebert, plaintiff's second line supervisor, remove plaintiff without prejudice. (Doc. 21, Ex. 3 ¶ 5; Ex. 8 at 24.) Although Paro felt plaintiff did an adequate job on the program, he removed plaintiff due to the request from USASAC and the Taiwan government. (Doc. 21, Ex. 3 ¶ 5; Ex. 8 at 24.) Ebert decided to move plaintiff as part of a restructuring of the directorate to avoid any appearance that the move was adverse. (Doc. 21, Ex. 6 ¶ 4.) The restructuring was originally scheduled to take place in December 1999, but was delayed until May 2000. (Doc. 21, Ex. 6 ¶ 4.) Plaintiff acknowledges being moved as part of a restructuring program. (Doc. 21, Ex. 2 at 72-73.)

On February 17, 2000, plaintiff was removed from her position on the Taiwan Avenger Program and placed in programs previously managed by Priscilla Minton. (Doc. 21, Ex. 11; Doc. 3 ¶ 7.) According to defendant, plaintiff was removed in anticipation of a previously scheduled meeting in March 2000 with Taiwan representatives. (Doc. 21, Ex. 8 at 24-25; Ex. 6 ¶ 5.)

Plaintiff believes she was discriminated against between January 20 and February 7, 2000, when Paro denied her request for a business class travel upgrade. (Doc. 21, Ex. 17 at 8-9.) She believes she was discriminated against when Paro and Ebert denied her a reasonable proposed accommodation, despite proof from her doctor of her disability. (Doc. 21, Ex. 17 at 8-9; Ex. 18.)

Plaintiff first felt discriminated against on February 7, 2000, when Paro and Ebert told her "they were not going to accommodate [her] disability." (Doc. 21, Ex. 2 at 17.) Plaintiff

believed Paro and Ebert were the only individuals to discriminate against her by refusing her a reasonable work accommodation, but plaintiff contends that they and others retaliated against her. (Doc. 42, Vol. 3, Ex. 1 at 18.)

Plaintiff first contacted an EEO counselor on September 6, 2000, and a final interview, initially scheduled for February 5, 2001, was not conducted by the EEO counselor until February 6, 2001.[3] (Doc. 41, Pl.'s Aff. ¶ 3 and ex. A; Doc. 21, Ex. 2 at 55-56; Ex. 13; Ex. 16 ¶ 2; Doc. 32, Ex. 1 ¶¶ 2-3.) No one from the EEO office told plaintiff she could not file her formal complaint until she received the investigative report. (Doc. 21, Ex. 16 ¶ 3.)

Plaintiff stated in one of her affidavits that she was not notified of or aware of the 45-day time requirement for contacting an EEO counselor. (Doc. 41, Pl.'s Aff. ¶ 1.) She also stated that two EEO counselors told her they would waive the 45-day reporting period and allow plaintiff's claim to proceed. (Doc. 41, Pl.'s Aff. ¶¶ 6, 7.) According to plaintiff there were "no general EEO posters or advisory notices posted" in the work area where plaintiff was assigned. (Doc. 41, Pl.'s Aff. ¶ 2.) Plaintiff contends she was singled out for verbal counseling within the 45-day period proceeding her contact with the EEO office, and she was unjustly reprimanded by Jan Robinson on August 23, 2000. (Doc. 41, Pl.'s Aff. ¶¶ 12, 13.)

Plaintiff indicated in her deposition that she read, signed, and received a "Notice of Right to File a Formal Complaint of Discrimination After Informal Counseling" while at the interview on February 6, 2000. In her affidavit, she stated she did not receive a copy of the form at that

---

[3] The final interview was actually conducted on February 6, 2001, although it was backdated at the request of the EEO representative to February 5, 2001. (*See* Doc. 21, Ex. 2 at 56; Doc. 32, Ex. 1 ¶ 3; Ex. 5 at 10.) Regardless, as the court will set out in its discussion, the fifteen day period for filing a formal complaint expired prior to March 20, 2001, the date the formal complaint was actually received by the EEO office. (*See* Doc. 21, Ex. 13.)

time.[4] (Doc. 21, Ex. 2 at 56-57; Ex. 13; Ex. 14; Ex. 16 ¶ 2; Doc. 32, Ex. 1 ¶ 4; Ex. 5 at 32-37, 44.) The EEO counselor testified in his deposition that he did not give plaintiff a copy of the notice at the interview because the copiers were not functioning that day. (Doc. 32, Ex. 5 at 32-37; 44.) The notice stated plaintiff was required to file a formal complaint of discrimination within "15 calendar days of receipt of the notice." (Doc. 21, Ex. 14; Ex. 16 ¶ 2.) In her deposition, plaintiff stated she later received a copy of the EEO counselor's report on February 22, 2001. (Doc. 21, Ex. 2 at 55-56.) In her affidavit, she added that she did not receive a copy of the notice of right to file a formal complaint until a couple days after her February 21, 2001, conversation with the EEO counselor. (Doc. 32, Ex. 1 ¶ 10, 12.)

Plaintiff met with and retained her first attorney on February 22, 2001, provided him with all the documents she had collected up to that point, and signed her formal complaint. (Doc. 21, Ex. 2 at 57-58; Doc. 32, Ex. 1 ¶ 14; Ex. 6 at 2; Ex. 7 at 4.) However, plaintiff's formal complaint was not filed, by fax from her counsel's office, until March 20, 2001; it was also forwarded via first class mail, postage pre-paid. (Doc. 21, Ex. 15, Ex. 14, Ex. 16 ¶ 3.) March 20, 2001, was a date beyond the fifteen days allowed for filing a formal complaint; therefore, on March 23, 2001, the EEO officer issued a Final Agency Decision dismissing plaintiff's complaint for failure to timely file a formal EEO complaint pursuant to 29 C.F.R. § 1614.107(a)(2). (Doc. 21, Ex. 13 at 1-2; Ex. 16 ¶ 4.)

---

[4] Plaintiff filed several affidavits, including one in support of her opposition to summary judgment. (Doc. 32, Ex. 1.) Plaintiff's affidavits were all signed and filed after her deposition testimony was taken. (*See* Doc. 21, Ex. 2 at 1; Doc. 32, Ex. 1 at 5; Doc. 41, Pl.'s Aff. at 3; Doc. 42, Ex. A at 7; Ex. B at 3.)

II.  **Summary Judgment Standard**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met her burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

III.  **Plaintiff's Rehabilitation Act and Title VII Claims**

    a. **Exhaustion of Remedies**

Exhaustion of administrative remedies is a prerequisite for federal employees filing discrimination claims. *Brown v. General Services Administration*, 425 U.S. 820, 832 (1976). When a federal employee makes a charge of discrimination, she must follow the regulations

promulgated by the EEOC for the acceptance and processing of such discrimination complaints. 29 C.F.R. § 1614.107(b) (detailing procedures for administrative processing of federal Title VII complaints). The regulations provide time limits for the filing of discrimination complaints. As part of the pre-complaint process, "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory . . . ." 29 C.F.R. § 1614.105(a)(1). However, when the aggrieved party is not notified or otherwise aware of the 45-day time limit for filing a discrimination claim, the "Agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) . . . ." 29 C.F.R. § 1614.105(a)(2). If the matter is not resolved through the informal process, the Counselor must issue to the aggrieved person, in writing, a notice of her right to file a formal complaint of discrimination. 29 C.F.R. § 1614.105(d). Once the employee receives notice of her right to file a formal complaint, the employee must file such formal complaint within fifteen days of receipt of the notice. 29 C.F.R. § 1614.106(b).

Title VII laws and administrative rules are in place, not as technicalities, but as part of Congress's statutory scheme of achieving a "careful blend of administrative and judicial enforcement powers." *Brown*, 425 U.S. at 833; *see also McKart v. United States*, 395 U.S. 185, 195 (1969). Administrative exhaustion "is not a technicality." *Grier v. Secretary of the Army*, 799 F.2d 721, 724 (11th Cir. 1986). When a plaintiff fails to timely notify an EEO counselor or timely file a formal complaint, therefore exhausting her administrative remedies, courts have upheld dismissal or summary judgment. *See, e.g., Baldwin County Welcome Center v. Brown*, 466 U.S. 147 (1984)(per curiam); *Delaware State College v. Ricks*, 449 U.S. 250 (1980); *United Airlines, Inc. v. Evans*, 431 U.S. 553 (1977). The Eleventh Circuit has also held that a federal

employee's failure to timely initiate an administrative discrimination complaint, without a proper excuse, results in summary judgment or dismissal of the suit against the plaintiff. *See, e.g., Manning v. Carling*, 786 F.2d 1108, 1109 (11th Cir. 1986); *Bickham v. Miller*, 584 F.2d 736, 737-38 (5th Cir. 1978).[5]

Plaintiff believes she was discriminated against between January 20 and February 7, 2000, when Paro denied her request for a business class travel upgrade. She contends that Paro and Ebert denied her a reasonable accommodation, despite proof from her doctor of her disability. With regard to her retaliation claim, plaintiff states the retaliation continued through August, 2000. Plaintiff did not contact an EEO counselor until September 6, 2000.

While the Army contends plaintiff failed to timely initiate her informal pre-complaint process, there is evidence showing plaintiff's 45-day time limit was extended. Plaintiff stated in one of her affidavits that she was granted an extension on the 45-day time limit by two EEO counselors because she was not notified of or aware of the time limit, and that there were no posters or advisory notices posted in her work area. Pursuant to 29 C.F.R. § 1614.105(a)(2), plaintiff may be granted an extension to the 45-day time limit. Construing the facts in a light most favorable to the plaintiff, the court will assume, for purposes of summary judgment only, that plaintiff was granted an extension on the 45-day time limit and that she timely initiated the informal pre-complaint process.[6]

---

[5] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[6] Defendant argues that plaintiff had notice of the 45-day time limit because she was required to attend yearly Prevention of Sexual Harassment and other EEO training that covered the filing timeliness. *See* Affidavit of Shirley Baker, ¶ 2, (attached to defendant's reply to

The next issue is whether plaintiff timely filed her formal administrative complaint of discrimination. Plaintiff last met with her EEO counselor to discuss her complaint on February 6, 2001, although the documents produced that day were dated February 5, 2001. At the meeting, although she signed, and may have read, the documents giving her notice of the fifteen day time limit for filing a formal complaint, plaintiff did not receive copies of those documents. She did not receive a copy of the EEO counselor's report until February 22, 2001. Plaintiff met, discussed her claims with, and retained an attorney on February 22, 2001. At that time, plaintiff signed her formal complaint of discrimination. Plaintiff did not actually file her formal complaint of discrimination, through her attorney at the time, until March 20, 2001, more than 15 days after she received her notice of right to file a formal complaint.

Defendant contends the fifteen day time period should begin to run from February 5, 2001, the date the notice of right to file a formal complaint was signed, or February 6, the date the actual meeting took place. Plaintiff asserts the date should not begin running until February 22, 2001. However, the court need not decide this issue.[7] For purposes of summary judgment,

---

"Plaintiff's Second Motion in Opposition to Defendant's Motion to Dismiss, or in the Alternative, Summary Judgment.") According to defendant, EEO time lines were posted on the Redstone Arsenal intranet available to all employees. *Id.* However, in addition to her alleged lack of knowledge regarding the 45-day filing requirement, plaintiff contends that two EEO representatives agreed to waive the 45-day reporting period. In order to decide whether plaintiff's informal complaint was timely, the parties would have to submit evidence not before the court (i.e. testimony from the two EEO representatives, proof that plaintiff knew or should have known of the filing requirements). As noted, the court will assume, without deciding, that plaintiff timely initiated the informal complaint process.

[7] Plaintiff requests that the court find the time period for her to file a formal complaint of discrimination was tolled from February 6, 2001 to February 21, 2001. However, it is not necessary for the court to make such a determination. The outcome of this lawsuit is not dependent upon such a determination because, as discussed above, assuming, without deciding, that the time period was tolled, plaintiff's formal complaint was still untimely. Plaintiff's formal

the court will view the evidence in a light most favorable to plaintiff. Even if the court assumed plaintiff did not receive her notice by March 1, 2001, a week after February 22, 2001, plaintiff still failed to file her formal complaint within the fifteen day time limit as required under 29 C.F.R. § 1614.106(b) (2004). Because plaintiff failed to meet the fifteen day time requirement for filing a formal complaint of discrimination, her claims are due to be dismissed.

### b. Merits of Plaintiff's Rehabilitation Act and Title VII Claims

Plaintiff correctly conceded in her opposition to defendant's Motion for Summary Judgment that plaintiff's first counsel did not timely file a formal complaint within the required fifteen day filing deadline imposed by 29 C.F.R. § 1614.106(b). Therefore, defendant's Motion for Summary Judgment is due to be granted.

In her initial Memorandum in Opposition, plaintiff did not address the merits of defendant's Motion for Summary Judgment on plaintiff's Rehabilitation Act and Title VII retaliation claims.[8] At the court's request, plaintiff filed evidence pertaining to the merits of her claims, as well as a Second Memorandum to which defendant submitted a Memorandum in Reply. The court has carefully reviewed the memoranda and evidence submitted by both parties on the merits of plaintiff's claims. Although plaintiff's complaint is due to be dismissed for failure to follow administrative prerequisites to suit, the court is also satisfied defendant is

---

complaint was not filed until March 20, 2001, over fifteen days beyond February 21, 2001, the date plaintiff contends should start the running of the time for filing her formal complaint.

[8] Plaintiff's current counsel has indicated that plaintiff possibly will sue her first counsel for failure to timely file her formal complaint. Because the court is granting summary judgment on a procedural ground, which plaintiff concedes, the court would not normally address the merits of plaintiff's claims. However, due to the fact that plaintiff is at least contemplating a lawsuit against her former counsel, the court will briefly address the merits of plaintiff's claims.

entitled to judgment as a matter of law on the merits of plaintiff's claims. Based on a careful review of the evidence submitted by the parties, the court agrees with the arguments in defendant's initial Memorandum and "Defendant's Memorandum in Reply," that plaintiff's evidence does not establish a prima facie case of discrimination under the Rehabilitation Act. In order to establish a prima facie case of discrimination under the Rehabilitation Act, plaintiff must demonstrate 1) that she has a disability within the meaning of the statute and relevant regulations, 2) that she is a qualified individual, and 3) that she was discriminated against because of her disability. *Harris v. H & W Contracting Co.*, 102 F.3d 516, 519 (11th Cir. 1996). (addressing the ADA) A disability under the Rehabilitation Act requires A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; B) a record of such an impairment or C) being regarded as having such an impairment 29 U.S.C. § 705(20)(b).

Plaintiff did not present evidence on which a reasonable jury could find that she had a physical or mental impairment that substantially limited a major activity. EEOC Regulations provide, (with respect to the major life activity of working),

> The term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).

Plaintiff contends that she suffers from bilateral myosacial pain syndrome resulting from nerve damage in her hips and buttocks. She also claims she suffers from chronic migraine headaches, sciatica and diabetes. However, plaintiff's Rehabilitation Act claim is premised on

her argument that defendant did not upgrade her airline ticket to a business class ticket for a planned trip to Taiwan, to accommodate her problem with sitting for a long period of time. The only medical evidence offered by plaintiff is an undated note from her doctor which stated: "The patient, Shirley Baker, is unable to sit in a confined area for long periods of time without being able to shift from side to side and elevate her feet, including airplane flights in economy class for more than 3-4 hours. This is due to nerve damage in the hips, sciatica and diabetes insipidus."

Plaintiff has not satisfied her burden with respect to the first element of her Rehabilitation Act claim, that is, she has not established by a preponderance of the evidence that she is "disabled" as that term is defined in the governing statutes and regulations. Plaintiff argues that defendant failed to reasonably accommodate her "disability" by providing her with an upgrade to a business class airline ticket to Taiwan. Plaintiff has not established that she was a qualified person with a disability entitled to the accommodation she requested.[9]

Plaintiff also contends that defendant discriminated and/or retaliated against her after she requested an accommodation by transferring her to a "low visibility, low importance, low activity job." Plaintiff's Second Memorandum in Opposition to Army's Motion for Summary Judgment at 17. In the evidence submitted to the court, plaintiff failed to establish a prima facie case of either disparate treatment or retaliation. There are several reasons why defendant is entitled to judgment on any disparate treatment or retaliation claim; one obvious reason is that plaintiff did not establish her prima facie case because no reasonable jury could find that plaintiff suffered any adverse personnel action.

---

[9] Defendant's position is that plaintiff was not sent to Taiwan because she was removed for legitimate nondiscriminatory reasons from the team going to Taiwan.

Assuming however that plaintiff established a prima facie case, defendant has articulated legitimate, non-discriminatory and non-retaliatory reasons for its actions. There is no evidence of prextext. Thus, even if defendant was not entitled to judgment on procedural grounds, it would also be entitled to judgment as a matter of law on the merits of plaintiff's claims.

## IV. Conclusion

For the reasons stated herein, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 24th day of March, 2004.

SHARON LOVELACE BLACKBURN
United States District Judge